In the United States District Court
for the District of New Hampshire

| Joshua Winsor, | |
|---|---|
| *On behalf of himself and those similarly situated*, | Case No. |
| Plaintiff, | Judge |
| v. | |
| TBD Pizza, Inc., Eric DeLorenzo, Robert P. Rivard, John Doe Corporation 1-10, John Doe 1-10; | Jury Demand Endorsed Hereon |
| Defendants. | |

## Class and Collective Action Complaint

1.      Plaintiff Joshua Winsor, on behalf of himself and all similarly-situated individuals, brings this action against Defendants TBD Pizza, Inc., Eric DeLorenzo, Robert P. Rivard, John Doe Corporation 1-10, and John Doe 1-10 (collectively "Defendants"). Plaintiff seeks appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiff and similarly-situated individuals with minimum wages as required by the Fair Labor Standards Act ("FLSA") and New Hampshire law.

2.      Defendants operate or have operated a least 6 Domino's Pizza franchises in Massachusetts and New Hampshire (the "TBD Pizza, Inc." stores or restaurants) since on or about 2009.

3.     Defendants have repeatedly and willfully violated the Fair Labor Standards Act and New Hampshire law by failing to adequately reimburse delivery drivers for their delivery-related expenses, thereby failing to pay delivery drivers the legally mandated minimum wage wages for all hours worked.

4.     All delivery drivers at the TBD Pizza stores, including Plaintiff, have been subject to the same or similar employment policies and practices, including policies and practices with respect to wages and reimbursement for delivery-related expenses.

5.     Plaintiff brings this action on behalf of himself and similarly situated current and former delivery drivers who elect to opt in pursuant to FLSA, 29 U.S.C. § 216(b) to remedy violations of the FLSA wage and hour provisions by Defendants.

6.     Plaintiff also brings this action on behalf of himself and similarly situated current and former delivery drivers in New Hampshire, pursuant to Federal Rule of Civil Procedure 23, to remedy violations of New Hampshire wage and hour law.

I.   **Jurisdiction and Venue**

7.     Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's FLSA claims.

8.     Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's New Hampshire law claims.

9.     Venue in this Court is proper under 28 U.S.C. § 1391(b) because Plaintiff resides in New Hampshire and Defendants own and operate the subject stores in this district.

## II. Parties

### Plaintiff

**Joshua Winsor**

10. Plaintiff resides in the state of New Hampshire at all times relevant. Plaintiff worked for Defendants in New Hampshire at three of their stores located in Londonderry, Derry, and Salem.

11. At all times relevant, Plaintiff was an "employee" of Defendants as defined in the FLSA and New Hampshire wage law.

12. Plaintiff has given written consent to join this action.

### Defendants

**TBD Pizza, Inc.**

13. Defendant TBD Pizza, Inc. is a Massachusetts corporation headquartered at 9 Fairway Drive, Andover, Massachusetts 01810-4640.

14. Upon information and belief, Eric DeLorenzo is the Director of Business Affairs for TBD Pizza, Inc.

15. Upon information and belief, Robert P. Rivard is the President of TBD Pizza, Inc.

16. TBD Pizza, Inc. operates or has operated during the relevant time period at least 6 Domino's Pizza stores in 2 states, including Massachusetts and New Hampshire.

17. TBD Pizza Inc. has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

18. TBD Pizza Inc. has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

3

19.    At all relevant times, TBD Pizza Inc. maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

20.    TBD Pizza Inc. is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA and New Hampshire law.

21.    At all relevant times, TBD Pizza Inc. has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

22.    Upon information and belief, TBD Pizza Inc. gross revenue exceeds $500,000 per year.

**Eric DeLorenzo**

23.    Defendant Eric DeLorenzo is the Director of Business Affairs for TBD Pizza, Inc.

24.    Defendant Eric DeLorenzo is the owner and CEO of the TBD Pizza, Inc. stores.

25.    Defendant Eric DeLorenzo is the owner and CEO of other legal entities that operate the TBD Pizza, Inc. stores.

26.    Defendant Eric DeLorenzo is the manager of other legal entities that operate the TBD Pizza, Inc. stores.

27.    Eric DeLorenzo is individually liable to TBD Pizza, Inc. delivery drivers under the definitions of "employer" set forth in the FLSA and New Hampshire law because he owns and operates the TBD Pizza, Inc. stores, serves as a manager and/or member of TBD Pizza, Inc., ultimately controls significant aspects of TBD Pizza, Inc. day-to-day functions, and ultimately controls compensation and reimbursement of employees.  29 U.S.C. § 203(d).

4

28.    At all relevant times, by virtue of his role as owner, CEO, and/or manager of TBD· Pizza, Inc., Eric DeLorenzo has had financial control over the operations at each of the TBD Pizza, Inc. stores.

29.    At all relevant times, by virtue of his role as owner, CEO, and/or manager of TBD Pizza, Inc., Eric DeLorenzo has a role in significant aspects of the TBD Pizza, Inc. day to day operations.

30.    At all relevant times, by virtue of his role as owner, CEO, and/or manager of TBD Pizza, Inc., Eric DeLorenzo has had control over the TBD Pizza, Inc. stores' pay policies.

31.    At all relevant times, by virtue of his role as owner, CEO, and/or manager of TBD Pizza, Inc., Eric DeLorenzo has had power over personnel and payroll decisions at the TBD Pizza, Inc., stores, including but not limited to influence over delivery driver pay.

32.    At all relevant times, by virtue of his role as owner, CEO, and/or manager of TBD Pizza, Inc., Eric DeLorenzo has had the power to hire, fire, and discipline employees, including delivery drivers at the TBD Pizza, Inc. stores.

33.    At all relevant times, by virtue of his role as owner, CEO, and/or manager of TBD Pizza, Inc., Eric DeLorenzo has had the power to stop any illegal pay practices that harmed delivery drivers at the TBD Pizza, Inc. stores.

34.    At all relevant times, by virtue of his role as owner, CEO, and/or manager of TBD Pizza, Inc., Eric DeLorenzo has had the power to transfer the assets and liabilities of TBD Pizza, Inc.

35.    At all relevant times, by virtue of his role as owner, CEO, and/or manager of TBD Pizza, Inc., Eric DeLorenzo has had the power to declare bankruptcy on behalf of TBD Pizza, Inc.

5

36.     At all relevant times, by virtue of his role as owner, CEO, and/or manager of TBD Pizza, Inc., Eric DeLorenzo has had the power to enter into contracts on behalf of each of the TBD Pizza, Inc. stores.

37.     At all relevant times, by virtue of his role as owner, CEO, and/or manager of TBD Pizza, Inc., Eric DeLorenzo has had the power to close, shut down, and/or sell each of the TBD Pizza, Inc. stores.

38.     At all relevant times, by virtue of his role as owner, CEO, and/or manager of TBD Pizza, Inc., Eric DeLorenzo had authority over the overall direction of each of TBD Pizza, Inc. stores and was ultimately responsible for their operations.

39.     The TBD Pizza, Inc. stores function for Eric DeLorenzo's profit.

40.     Eric DeLorenzo has influence over how the TBD Pizza, Inc. stores can run more profitably and efficiently.

**Robert P. Rivard**

41.     Defendant Robert P. Rivard is the Director of Business Affairs for TBD Pizza, Inc.

42.     Defendant Robert P. Rivard is the owner and CEO of the TBD Pizza, Inc. stores.

43.     Defendant Robert P. Rivard is the owner and CEO of other legal entities that operate the TBD Pizza, Inc. stores.

44.     Defendant Robert P. Rivard is the manager of other legal entities that operate the TBD Pizza, Inc. stores.

45.     Robert P. Rivard is individually liable to TBD Pizza, Inc. delivery drivers under the definitions of "employer" set forth in the FLSA and New Hampshire law because he owns and operates the TBD Pizza, Inc. stores, serves as a manager and/or member of TBD Pizza, Inc.,

6

ultimately controls significant aspects of TBD Pizza, Inc. day-to-day functions, and ultimately controls compensation and reimbursement of employees. 29 U.S.C. § 203(d).

46.     At all relevant times, by virtue of his role as owner, CEO, and/or manager of TBD Pizza, Inc., Robert P. Rivard has had financial control over the operations at each of the TBD Pizza, Inc. stores.

47.     At all relevant times, by virtue of his role as owner, CEO, and/or manager of TBD Pizza, Inc., Robert P. Rivard has a role in significant aspects of the TBD Pizza, Inc. day to day operations.

48.     At all relevant times, by virtue of his role as owner, CEO, and/or manager of TBD Pizza, Inc., Robert P. Rivard has had control over the TBD Pizza, Inc. stores' pay policies.

49.     At all relevant times, by virtue of his role as owner, CEO, and/or manager of TBD Pizza, Inc., Robert P. Rivard has had power over personnel and payroll decisions at the TBD Pizza, Inc., stores, including but not limited to influence over delivery driver pay.

50.     At all relevant times, by virtue of his role as owner, CEO, and/or manager of TBD Pizza, Inc., Robert P. Rivard has had the power to hire, fire, and discipline employees, including delivery drivers at the TBD Pizza, Inc. stores.

51.     At all relevant times, by virtue of his role as owner, CEO, and/or manager of TBD Pizza, Inc., Robert P. Rivard has had the power to stop any illegal pay practices that harmed delivery drivers at the TBD Pizza, Inc. stores.

52.     At all relevant times, by virtue of his role as owner, CEO, and/or manager of TBD Pizza, Inc., Robert P. Rivard has had the power to transfer the assets and liabilities of TBD Pizza, Inc.

7

53.     At all relevant times, by virtue of his role as owner, CEO, and/or manager of TBD Pizza, Inc., Robert P. Rivard has had the power to declare bankruptcy on behalf of TBD Pizza, Inc.

54.     At all relevant times, by virtue of his role as owner, CEO, and/or manager of TBD Pizza, Inc., Robert P. Rivard has had the power to enter into contracts on behalf of each of the TBD Pizza, Inc. stores.

55.     At all relevant times, by virtue of his role as owner, CEO, and/or manager of TBD Pizza, Inc., Robert P. Rivard has had the power to close, shut down, and/or sell each of the TBD Pizza, Inc. stores.

56.     At all relevant times, by virtue of his role as owner, CEO, and/or manager of TBD Pizza, Inc., Robert P. Rivard had authority over the overall direction of each of TBD Pizza, Inc. stores and was ultimately responsible for their operations.

57.     The TBD Pizza, Inc. stores function for Robert P. Rivard's profit.

58.     Robert P. Rivard has influence over how the TBD Pizza, Inc. stores can run more profitably and efficiently.

**John Doe Corporations 1-10**

59.     Upon information and belief, and in anticipation of likely evidentiary support after a reasonable opportunity for discovery, Defendants own and operate other entities and/or limited liability companies that also qualify as Plaintiff's "employer" under the FLSA and New Hampshire law.

60.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**John Doe 1-10**

61.     Upon information and belief, and in anticipation of likely evidentiary support after a reasonable opportunity for discovery, there are other Defendants who own an interest and/or have operational control over the TBD Pizza, Inc. stores that also qualify as Plaintiff's "employer" under the FLSA.

62.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

III.     **Facts**

**Classwide Factual Allegations**

63.     During all relevant times, Defendants have operated the TBD Pizza, Inc. stores.

64.     All or some of the TBD Pizza, Inc. stores employ delivery drivers who are primarily responsible for delivering pizzas and other food items to customers' homes and workplaces.

65.     Plaintiff and the similarly situated persons Plaintiff seek to represent are current and former delivery drivers employed by Defendants at the TBD Pizza, Inc. stores.

66.     All delivery drivers employed at the TBD Pizza, Inc. stores over the last three years have had essentially the same job duties—deliver pizza and other food items to customers.

67.     When there are no deliveries to make, Defendants' delivery drivers are required to work inside the TBD Pizza, Inc. stores building pizza boxes, making pizzas, cleaning, preparing food items, taking orders, and completing other duties inside the restaurant as necessary.

68.     Defendants' delivery drivers are paid minimum wage or slightly above minimum wage for all hours worked.

69.    Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

70.    Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, licensing, registration, and financing costs, and other equipment necessary for delivery drivers to complete their job duties.

71.    Pursuant to such requirements, Plaintiff and other similarly situated employees purchase gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, paid licensing, registration, and financing costs, and suffered automobile depreciation all for the primary benefit of Defendants.

72.    At all relevant times, Plaintiff and other similarly situated delivery drivers were reimbursed a per-mile reimbursement rate for each mile they drove that was less than the IRS standard business mileage rate.

73.    Defendants have not maintained records of the actual expenses incurred by their delivery drivers.

74.    Defendants have not reimbursed delivery drivers based on their actual expenses.

75.    Defendants have not reimbursed delivery drivers at the IRS standard business mileage rate.

76.    Defendants have not reimbursed delivery drivers based on a reasonable approximation of the expenses they incurred.

77.   At all relevant times, Defendants have failed to pay Plaintiff and similarly situated delivery drivers the legally required minimum wage and overtime wages because they failed to adequately reimburse them for their automobile expenses.

78.   According to the Internal Revenue Service, the standard mileage rates for the use of a car during the relevant time periods have been:

a.   2015: 57.5 cents/mile
b.   2016: 54 cents/mile
c.   2017: 53.5 cents/mile
d.   2018: 54.5 cents/mile
e.   2019: 58 cents/mile

79.   At all relevant times, Defendants apply the same or similar pay policies, practices, and procedures to all delivery drivers at the TBD Pizza, Inc. stores in New Hampshire and Massachusetts.

80.   All of Defendants' delivery drivers had similar experiences to those of Plaintiff. They received similar reimbursements; incurred similar automobile expenses; completed deliveries of similar distances and at similar frequencies; and were paid at or near the applicable minimum wage rate before deducting unreimbursed vehicle costs.

81.   Because Defendants paid their drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses and had deductions taken from their wages for the benefit of Defendants, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations.

82.   Defendants have willfully failed to pay federal and state minimum wage and overtime to Plaintiff and similarly situated delivery drivers at the TBD Pizza, Inc. stores.

11

**Plaintiff's Individual Factual Allegations**

83.     Defendants harmed Plaintiff in a manner consistent with their policies, patterns, and practices as described herein.

**Joshua Winsor**

84.     Winsor has worked at Defendants' Domino's store in Derry, Salem, and Londonderry, New Hampshire, from 2018 to the present.

85.     Winsor worked over 40 hours per week in one or more workweeks, as shown by Defendants' paystubs for the work he performed.

86.     Winsor is an hourly, non-exempt employee of Defendants.

87.     As a delivery driver, Winsor delivers pizza and other food items to Defendants' customers' homes and businesses.

88.     When he was not making deliveries, Winsor worked inside the restaurant, completing tasks such as taking orders, making pizza, building pizza boxes, taking out trash, sweeping up the food line, mopping and sweeping, and completing other general tasks within the store.

89.     Winsor was paid New Hampshire minimum wage for the hours he worked for Defendants.

90.     Winsor regularly made approximately two deliveries per hour during the hours he worked as a delivery driver.

91.     Defendants did not record all of Winsor's expenses he incurred while completing deliveries for them.

92.    Defendants did not reimburse Winsor at the IRS standard business mileage rate for each mile he drove.

93.    Defendants did not reimburse Winsor based on a reasonable approximation of his expenses.

94.    Defendants required Winsor to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, registration, licensing, and financing costs, and other equipment necessary for delivery drivers to complete their job duties.

95.    Pursuant to such requirements, Plaintiff purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, registration, licensing, and financing costs, and suffered automobile depreciation all for the primary benefit of Defendants.

96.    Winsor was reimbursed twenty-eight cents ($0.28) per mile he drove while completing deliveries for Defendants. Further, the system that Defendants' use to track these miles – the PULSE system – routinely undercounts his actual miles driven.

97.    Winsor regularly drove approximately seven (7) miles round trip per delivery.

98.    During 2018, for example, the IRS business mileage reimbursement has been $0.545 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates.

99.    Using that IRS rate as a reasonable approximation of Winsor's automobile expenses, every mile driven on the job decreased his net wages by approximately $0.265 ($0.545

13

- $0.28) per mile. Considering Winsor's estimate of about 7 average miles per delivery, Defendants under-reimbursed him about $1.86 per delivery ($0.265 x 7 average miles).

100.    Winsor made approximately 12 deliveries per day.

101.    Thus, Winsor consistently "kicked back" to Defendants approximately $22.32 per day ($1.86 per delivery x 12 deliveries). Plaintiff's typical shift lasted 8 hours, and thus he kicked back $2.79 per hour.  Plaintiff's typical work week was five days a week, and thus he kicked back $111.60 per week.

102.    As a result of these unreimbursed automobile expenses Defendants have failed to pay Winsor minimum wage as required by law.

103.    Defendants' also made Winsor drive to various other locations to do such tasks as pick up laundry, make bank deposits, and drop off promotional materials, among other things. All such mileage was completely un-reimbursed.

## IV.    Collective Action Allegations

104.    Plaintiff brings the First and Second Counts on behalf of himself and all similarly situated current and former delivery drivers employed at the TBD Pizza, Inc. stores owned, operated, and controlled by any of the named Defendants nationwide, including the States of Massachusetts and New Hampshire, during the three years prior to the filing of the original complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

105.    At all relevant times, Plaintiff and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of

willfully refusing to pay Plaintiff and the FLSA Collective minimum wage for all hours worked, and failing to reimburse delivery drivers for automobile expenses and other job-related expenses. Plaintiff's claims are essentially the same as those of the FLSA Collective.

106.    Defendants' unlawful conduct is pursuant to a corporate policy or practice of minimizing labor costs by failing to properly pay and reimburse Plaintiff and the FLSA Collective.

107.    Defendants are aware or should have been aware that federal law required them to reimburse delivery workers for expenses relating to "tools of the trade," such as, among other things, automobile costs and gasoline for delivery drivers.

108.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

109.    The First and Second Counts are properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

110.    The FLSA Collective members are readily identifiable and ascertainable.

111.    For the purpose of notice and other purposes related to this action, the FLSA Collective members' names and contact information are readily available from Defendants' records.

112.    In recognition of the services Plaintiff has rendered and will continue to render to the FLSA Collective, Plaintiff will request payment of a service award upon resolution of this action.

**V.    Class Action Allegations**

113.    Plaintiff brings the Third, Fourth, and Fifth Counts under Federal Rule of Civil Procedure 23, on behalf of himself and a class of persons consisting of:

All similarly situated current and former persons who work or worked as Delivery Drivers for Defendants Domino's stores in New Hampshire between the date

15

three years prior to the filing of the original complaint and the date of final judgment in this matter ("Rule 23 Class").

114. Excluded from the Rule 23 Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

115. The number and identity of the Rule 23 Class members are ascertainable from Defendants' records. The hours assigned and worked, the positions held, and the rates of pay and reimbursement for each Rule 23 Class Member are also determinable from Defendants' records. For the purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under Federal Rule of Civil Procedure 23.

116. The Rule 23 Class members are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

117. There are more than 50 Rule 23 Class members.

118. Plaintiff's claims are typical of those claims which could be alleged by any Rule 23 Class member, and the relief sought is typical of the relief that would be sought by each Rule 23 Class member in separate actions.

119. Plaintiff and the Rule 23 Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage, failing to reimburse for expenses, and failing to pay Plaintiff in a timely manner.

120.    Plaintiff and the Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with the New Hampshire wage laws.

121.    Plaintiff and the Rule 23 Class members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct. Defendants' corporate-wide policies and practices affected all Rule 23 Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each of the Rule 23 Class members.

122.    Plaintiff and the Rule 23 Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

123.    By seeking to represent the interests of the Rule 23 Class members, Plaintiff is exercising and intends to exercise his right to engage in concerted activity for the mutual aid or benefit of himself and his co-workers.

124.    Plaintiff is able to fairly and adequately protect the interests of the Rule 23 Class and have no interests antagonistic to the Rule 23 Class.

125.    Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

126.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.

127.    Upon information and belief, Defendants and other employers throughout the state violate minimum wage laws. Current employees are often afraid to assert their rights out

of fear of direct and indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

128.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

129.    Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting Plaintiff and the Rule 23 Class members individually and include, but are not limited to:

a.    Whether Defendants paid Plaintiff and the Rule 23 Class members at the proper minimum wage rate for all hours worked;

b.    Whether Defendants paid Plaintiff and the Rule 23 Class members at the proper overtime rate for all hours worked in excess of 40 hours each workweek;

c.    Whether Defendants failed to reimburse automobile expenses, as described herein, causing Plaintiff and the Rule 23 Class members' wages to drop below legally allowable minimum wage and overtime;

d.    Whether Defendants recorded and reimbursed the actual expenses of Plaintiff and the Rule 23 Class members;

e.    Whether Defendants reimbursed Plaintiff and the Rule 23 Class at the IRS standard business mileage rate;

f.    Whether Defendants paid Plaintiff and the Rule 23 Class all wages due within the timeframe contemplated by New Hampshire law;

g.    Whether Defendants' policy of failing to pay Plaintiff and the Rule 23 Class was instituted willfully or with reckless disregard of the law; and

18

h.     The nature and extent of class-wide injury and the measure of damages for those injuries.

130.   In recognition of the services Plaintiff has rendered and will continue to render to the Rule 23 Class, Plaintiff will request payment of a service award upon resolution of this action.

VI.     **Causes of Action**

## Count 1
### Failure to Pay Minimum Wages - Fair Labor Standards Act
### (On Behalf of Plaintiff and the FLSA Collective)

131.   Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

132.   Plaintiff and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

133.   Defendants required Plaintiff and the FLSA Collective to pay for automobile expenses out of pocket, failed to reasonably calculate the value of said expenses, and failed to adequately reimburse Plaintiff and the FLSA Collective for said expenses.

134.   By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA Collective.

135.   Plaintiff and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

136.   As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

## Count 2
### Failure to Pay Overtime Wages – Fair Labor Standards Act
### (On Behalf of Plaintiff and the FLSA Collective)

137. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

138. Plaintiff and the FLSA Collective worked more than forty hours in one or more workweeks.

139. Because Defendants required Plaintiff and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket, Defendants did not pay Plaintiff and the FLSA Collective at least one and a half times their normal hourly rate for time worked in excess of forty hours per workweek.

140. By not paying Plaintiff and the FLSA Collective proper overtime wages for time worked in excess of forty hours in a workweek, Defendants have willfully violated the FLSA.

141. As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

## Count 3
### Failure to Pay Minimum Wages – New Hampshire Statute 279, *et seq.*
### (On Behalf of Plaintiff and the Rule 23 Class)

142. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

143. Defendants paid Plaintiff and the Rule 23 Class below minimum wage for the hours they worked by requiring them to cover automobile expenses without adequate reimbursement.

144.    Defendants are employers of Plaintiff and the Rule 23 Class as the term is defined in N.H. Rev. Stat. § 279:1.

145.    By failing to pay Plaintiff and the Rule 23 Class minimum wage for all hours worked, Defendants have violated N.H. Rev. Stat. § 279:21.

146.    As a result of Defendants' failure to pay Plaintiff and the Rule 23 Class the wages they are due, Plaintiff and the Rule 23 Class are entitled to unpaid wages, costs, reasonable attorneys' fees, and interest. N.H. Rev. Stat. § 279:29.

## Count 4
### Failure to Pay Overtime Wages – N.H. Rev. Stat. § 279:21 *et seq*.
### (On Behalf of Plaintiff and the Rule 23 Class)

147.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

148.    Defendants failed to properly pay Plaintiff and the Rule 23 Class overtime wages for hours worked in excess of 40 per workweek by requiring them to cover automobile expenses without adequate reimbursement.

149.    Defendants are employers of Plaintiff and the Rule 23 Class as the term is defined by N.H. Rev. Stat. § 279:21.

150.    By failing to pay Plaintiff and the Rule 23 Class overtime wages for hours worked in excess of 40 per workweek, Defendants have violated N.H. Rev. Stat. § 279:21.

151.    As a result of Defendants' failure to pay Plaintiff and the Rule 23 Class the wages they are due, Plaintiff and the Rule 23 Class are entitled to unpaid wages, costs, reasonable attorneys' fees, and interest.

## Count 5
### N.H. Rev. Stat. § 279:21
### (On Behalf of Plaintiff and the Rule 23 Class)

152.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

153.    During all relevant times, Defendants were employers of Plaintiffs and the Rule 23 Class were employees within the meaning of N.H. Rev. Stat. § 279:1.

154.    N.H. Rev. Stat. § 275:43 requires that Defendants pay Plaintiff and the Rule 23 Class wages due at least once every two weeks.

155.    N.H. Rev. Stat. § 279:29 permits employees to recover attorney's fees and expenses.

156.    By failing to pay Plaintiffs and the Rule 23 Class all wages due to them under the FLSA and New Hampshire law, Defendants have violated New Hampshire law.

157.    Plaintiffs and the Rule 23 Class's unpaid wages and unreimbursed expenses have remained unpaid for more than two weeks after they were earned.

158.    In violating New Hampshire law, Defendants acted willfully, without a good faith basis and with reckless disregard to New Hampshire law.

159.    As a result of Defendants' willful violation, Plaintiffs and the Rule 23 Class are entitled to unpaid wages, liquidated damages, costs, and attorneys' fees.

**WHEREFORE**, Plaintiff Joshua Winsor prays for all of the following relief:

A.    Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class,

apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and his counsel to represent the collective action members.

B.      Unpaid minimum wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations;

C.      Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

D.      Designation of Plaintiff as representative of the Rule 23 Class and counsel of record as Class Counsel;

E.      A declaratory judgment that the practices complained of herein are unlawful under the FLSA and New Hampshire law.

F.      An award of unpaid minimum wages, unpaid overtime wages, and unreimbursed expenses due under the FLSA and New Hampshire law.

G.      An award of prejudgment and post-judgment interest.

H.      An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

I.      Such other legal and equitable relief as the Court deems appropriate.

## JURY DEMAND

Plaintiff hereby demands a jury trial by the maximum persons permitted by law on all

issues herein triable to a jury.

Date: 9/23/19                           Respectfully submitted,

/s/ Biron L. Bedard
Biron L. Bedard (NHBA #8758)
1 Capitol Street, P.O. Box 600
Concord, NH 03302-0600
(603) 228-0477
bbedard@ranspell.com

/s/ Andrew P. Kimble
/s/ Phillip J. Krzeski
Andrew P. Kimble* (Ohio Bar # 0095713)
Phillip J. Krzeski* (Ohio Bar # 0093172)
BILLER & KIMBLE, LLC
325 Edwards Road, Suite 650
Cincinnati, OH 45209
(513) 651-3700
akimble@billerkimble.com
pkrzeski@billerkimble.com

/s/ Frank V. Raimond
Frank V. Raimond* (NY Bar # 4409959)
RAIMOND & STAINES, LLC
305 Broadway, 7th Floor
New York, NY 10007
(212) 884-9636
frank@raimondstaines.com

*Pro hac vice admission to be sought